**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA

v.                                                      Case No.: 2:10-CR-178

RYAN ROSS,
AARON COOPER, and
RALPH OLIVER

**OPINION AND ORDER**

Defendants Ross, Cooper, and Oliver move for relief pursuant to 28 U.S.C. § 2255. They

challenge their convictions and sentences for violating 18 U.S.C. § 924(c). They argue that after

imposition of their sentences, the law changed such that a violation of 18 U.S.C. § 922(u)—theft

from a federally licensed firearm dealer, the predicate offense used here—can no longer serve as

a "crime of violence" for purposes of § 924(c).


**A.      Background**

**(1)     *Crime spree***

Defendants Ross,[i] Cooper,[ii] and Oliver[iii] admitted committing an armed crime spree.

On August 20, 2010, Mr. Oliver and Mr. Ross robbed a Cricket cell phone store in

Chicago. One of the Defendants displayed a handgun during this robbery. The Defendants stole

about $830 from this store.

One week later, Mr. Ross, Mr. Oliver, and Mr. Cooper robbed a Get Connected cell

phone store in Chicago. One of the Defendants displayed an automatic firearm during this

robbery. They stole cash, clothing, and cell phones amounting to about $11,710.

Five days later, the three Defendants (and Mr. Williams, another Co-Defendant, who has not petitioned for relief under § 2255) robbed a Hotline Wireless cell phone store in Chicago. One Defendant pointed a gun at a clerk. They stole cash and cell phones amounting to about $1,500.

Two days later, on September 3, 2010, the four Defendants robbed Jack's Loan Office in Gary, Indiana. Mr. Cooper pointed a firearm at the head of an employee. Mr. Ross pointed a BB gun at another employee.

This time the victims resisted.

One of the employees shot and hit Mr. Cooper. Another employee grabbed Ross's gun and handcuffed him. Defendants Cooper, Oliver, and Williams fled with stolen guns, ammunition, cash, and a gun-shot wound, and without their Co-Defendant Ross.

**(2)     *Defendants Ross and Cooper***

An indictment charged Mr. Ross, Mr. Cooper, and Mr. Oliver with theft of firearms from a federally licensed firearm dealer, in violation of 18 U.S.C. § 922(u), and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and § 2.

The indictment specified the § 922(u) charge as the predicate "crime of violence" for the § 924(c) charge.

Mr. Cooper and Mr. Ross entered plea agreements. Both Defendants agreed to plead guilty to both the § 922(u) and the § 924(c) charges.

In the plea agreements, Mr. Cooper and Mr. Ross also agreed to waive their rights to appeal or contest their convictions or sentences. The plain language of the waiver is broad:

Defendants agreed to waive "any ground." (Cooper's Plea Agreement, DE 53 at 4; Ross's Plea Agreement, DE 68 at 4.) The plain language is also specific: it cites 28 U.S.C. § 2255 as waived, the exact section Defendants now seek to invoke. (*Id.*)

The Court sentenced Mr. Cooper to a term of 27 months for theft of firearms from a federally licensed firearm dealer (in violation of § 922(u)) plus a consecutive term of 84 months for use of a firearm during and in relation to a federal crime of violence (in violation of § 924(c)), for a total term of 111 months imprisonment.

The Court sentenced Mr. Ross to a term of 96 months for theft of firearms from a federally licensed firearm dealer plus a consecutive term of 84 months for use of a firearm during and in relation to a federal crime of violence, for a total term of 180 months imprisonment. The Court dismissed Count 3 of the indictment against Mr. Ross on the government's motion.


**(3)**     ***Defendant Oliver***

A superseding indictment charged Mr. Oliver with theft of firearms from a federally licensed firearm dealer in violation of 18 U.S.C. § 922(u), with Hobbs Act robbery in violation of 18 U.S.C. § 1951 and § 2, and with use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2. The superseding indictment referenced § 922(u) as the predicate offense for the § 924(c) charge.

Mr. Oliver entered into a plea agreement. He agreed to plead guilty to the § 1951 and the § 924(c) charges, with the same express admissions of guilt made by his Co-Defendants. (Oliver's Plea Agreement, DE 134 at 3.) The government agreed to move for dismissal of three other counts against Mr. Oliver.

Mr. Oliver also agreed to waive his rights to appeal or contest his conviction or sentence. His waiver matches those of his Co-Defendants.

The Court sentenced Mr. Oliver to a term of 106 months for conspiracy to interfere with commerce by threats or violence (in violation of § 1951) plus a consecutive term of 84 months for use of a firearm during and in relation to a federal crime of violence (in violation of § 924(c)), for a total term of 190 months imprisonment. The Court dismissed Counts 1, 2, and 4 of the superseding indictment on the government's motion.

**(4)**    *Mr. Ross's first motion for relief under § 2255*

Mr. Ross first moved for relief under 28 U.S.C. § 2255 on October 18, 2012. The Court denied relief on the basis of Mr. Ross's waiver in his plea agreement of the right to pursue relief under § 2255, and noted that Mr. Ross's motion failed on its merits anyway.

**(5)**    *Change in law*

Years after the Court sentenced Defendants, the Supreme Court changed the law. In *Johnson*, the Supreme Court held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act—the second half of 18 U.S.C. § 924(e)(2)(B)(ii)—violates the Constitution's guarantee of due process. *Johnson v. United States*, 135 S.Ct. 2551, 2563 (2015). The instant case involves a similar clause.

So Mr. Ross asked the Seventh Circuit for permission to file a successive § 2255 motion.[1] The Seventh Circuit granted permission, without diving into a deep investigation of the merits of

---

[1] In its briefing before the Seventh Circuit, the government noted the potential issue of procedural default. But the government did not raise that issue here.

or defenses against Mr. Ross's arguments. Rather, the Seventh Circuit specifically permitted the government to raise its various contentions before this Court.

Defendants Ross, Cooper, and Oliver then moved this Court for relief under § 2255. These three motions are similar to each other. Defendants ask the Court to vacate their convictions and sentences for violating 18 U.S.C. § 924(c). Defendants argue that the crime of violence predicating the § 924(c) convictions was theft from a federally licensed firearm dealer in violation of 18 U.S.C. § 922(u). But, Defendants argue, § 922(u) cannot constitutionally support a conviction for § 924(c) because § 922(u) is not a "crime of violence" under either prong of § 924(c)'s definition of that phrase.

Violation of § 922(u) does not satisfy § 924(c)(3)(A)—the "elements" or "force" clause—under the categorical approach because a Defendant could commit theft from a federally licensed firearm dealer without using or attempting or threatening physical force. The government agrees.

And, Defendants argue, violation of § 922(u) does not satisfy § 924(c)(3)(B)—the "residual" clause—because that clause is unconstitutional for essentially the same reasons the second half of § 924(e)(2)(B)(ii) is unconstitutional. The Seventh Circuit clarified this issue while Defendants' § 2255 motions were pending. In *Cardena*, the Seventh Circuit held that § 924(c)(3)(B) is unconstitutionally vague. *United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016).[2]

---

[2] A closely related issue currently pends before the Supreme Court. *See Lynch v. Dimaya*, 137 S.Ct. 31 (2016) (granting a writ of certiorari regarding the Ninth Circuit's decision that the residual clause at 18 U.S.C. § 16(b) is unconstitutionally vague).

B.    Law

Section 2255(a) of Title 28 provides a federal prisoner a process for challenging his

sentence:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the sentence
> was imposed in violation of the Constitution or laws of the United States,
> or that the court was without jurisdiction to impose such sentence, or that
> the sentence was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move the court which imposed
> the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Relief under § 2255 is appropriate only for "an error of law that is jurisdictional,

constitutional, or constitutes a fundamental defect which inherently results in a complete

miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004).

Relief under § 2255 is extraordinary because it seeks to reopen the criminal process for a

person who already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d

518, 521 (7th Cir. 2007).

A defendant "may validly waive both his right to a direct appeal and his right to collateral

review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681

(7th Cir. 2011). "It is well-settled that waivers of direct and collateral review in plea agreements

are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013).

The standard exceptions recognized by the Seventh Circuit to such a waiver are where:

1.    the plea agreement was involuntary;

2.    the district court relied on a constitutionally impermissible factor, such as race;

3.    the sentence exceeded the statutory maximum;

4.    the defendant claims ineffective assistance of counsel in connection with the

negotiation of the plea agreement; or

5.    there is a lack of some minimum of civilized procedure.

*Keller*, 657 F.3d at 681; *United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985) (regarding

the fifth exception).

Plea agreements are contracts, subject to contract law tempered by constitutional

limitations. *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Within the parameters of

the Constitution as enumerated by the standard exceptions just listed, both the defendant and the

government are free to make deals that might turn out in hindsight to be bad. Both are free to

barter for favorable terms in exchange for an assumption of the risk that the law might change in

unexpected ways. *Id.*

## C.    Discussion

### (1)    *Waiver*

This Court need not reach the merits of Defendants' claims if the counseled, voluntary

plea agreements waive the claims. Unless an exception applies, a "voluntary and knowing waiver

of an appeal is valid and must be enforced." *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir.

2012).

Here, all three Defendants agreed to this provision in their plea agreements:

> I understand that the law gives a convicted person the right to appeal the
> conviction and the sentence imposed; I also understand that no one can
> predict the precise sentence that will be imposed, and that the Court has
> jurisdiction and authority to impose any sentence within the statutory
> maximum set for my offense as set forth in this plea agreement; with this
> understanding and in consideration of the government's entry into this plea

agreement, I expressly waive my right to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court **on any ground**, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under **Title 28, United States Code, Section 2255**;

(Cooper's Plea Agreement, DE 53 at 4; Ross's Plea Agreement, DE 68 at 4; and Oliver's Plea Agreement, DE 134 at 4, emphasis added.) As noted, these waivers are at once broad and specific: Defendants waive the right to contest on *any* ground, and Defendants specifically waive the right to pursue relief under § 2255.

The waiver provision mentions only one exception. Defendants may appeal or contest on the ground of ineffective assistance of counsel relating directly to this waiver or its negotiation. Defendants do not assert that ground here.

Defendants could have insisted on including a broader escape hatch in the waiver provision. Courts within this Circuit have mentioned the possibility of broader escape hatches for years. *See Bownes*, 405 F.3d at 636 ("Since there is abundant case law that appeal waivers worded as broadly as this one are effective even if the law changes in favor of the defendant after sentencing . . . the absence of an explicit escape clause is compelling evidence that no escape is allowed.").

If Defendants had insisted on a broader escape hatch, the government presumably would have insisted on other changes to the terms of the plea agreement in exchange. In any event, the waiver provision Defendants accepted does not include an escape hatch applicable here.

8

**(2)**     ***No standard exceptions to waiver apply***

None of the standard exceptions recognized by the Seventh Circuit apply here either.


(a)     *The plea agreements were not involuntary*

First, the plea agreements were not involuntary.

Defendants acknowledged in the plea agreements that they entered these agreements knowingly and voluntarily: "I believe and feel that my lawyer has done all that anyone could do to counsel and assist me, and that I now understand the proceedings in this case against me. I declare that I offer my plea of guilty freely and voluntarily and of my own accord . . . . (Cooper's Plea Agreement, DE 53 at 6; Ross's Plea Agreement, DE 68 at 6; and Oliver's Plea Agreement, DE 134 at 5, paragraph numbering omitted.) But one might call reliance on that language a sort of question-begging.

During their colloquies with the Court at their plea hearings, the Defendants acknowledged that their plea agreements were knowing and voluntary. (*See, e.g.*, Transcript of Oliver's Plea Hearing, DE 224 at 19–20.)

Defendants argue that neither they nor the government could have knowingly agreed to the waiver because no party knew or could have anticipated *Johnson* would change the law.

But change is one of few constants.

American law constantly changes. That's a reason to include escape hatches. When a party enters into a contract, he often assumes the risk that the contract will prevent him from taking advantage of future changes that might have produced better results for him. The Seventh

9

Circuit rejected Defendants' present arguments. *See Bownes*, 405 F.3d 634. This Court is not persuaded by Defendants' attempt to distinguish *Bownes*.

(b)    *The Court did not rely on a "constitutionally impermissible factor"*

Second, the Court did not rely on a constitutionally impermissible factor, such as race or gender. Defendants do not claim the Court did. Rather, Defendants argue that *Johnson* and *Cardena* changed the law such that § 924(c)'s residual clause is unconstitutional; so reliance on § 922(u) as a predicate offense to support a § 924(c) conviction constitutes reliance on a constitutionally impermissible factor; because § 922(u) does not satisfy § 924(c)'s elements clause under the categorical approach because the use, attempted use, or threatened use of physical force is not required for commission of an offense under § 922(u); and because § 922(u) cannot satisfy 924(c)'s residual clause because that clause is unconstitutionally vague. In short, Defendants argue that conviction of § 924(c) predicated on § 922(u) necessarily involves reliance on an unconstitutional factor.

But the Seventh Circuit simply doesn't mean anything like that when it references "constitutionally impermissible factors" in this context. Rather, the Seventh Circuit means by this phrase such factors as race and gender. Indeed, the Seventh Circuit routinely includes the parenthetical modifier "(such as race)" when it mentions the possibility of surviving a waiver if the trial court relied on a constitutionally impermissible factor. *See Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999) ("We have recognized that the right to appeal survives where the agreement is involuntary, or the trial court relied on a constitutionally impermissible factor (such as race) . . . .").

10

In fact, all four cases Defendants cite for the proposition that a waiver is unenforceable if the district court relied on a "constitutionally impermissible factor" include the parenthetical explanation that this phrase means factors like race, and one case adds gender as another example. *Keller*, 657 F.3d at 681 ("(such as race)"); *Jones*, 167 F.3d at 1144 ("(such as race)"); *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir. 1997) (A waiver will not be enforced "if the district judge relied on impermissible facts in sentencing (for example, the defendant's race or gender) . . . ."); *United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir. 1997) (A waiver "will not be enforced if a sentencing judge relied on impermissible facts (such as a defendant's race) . . . .").

As a sister district recently put it, a "constitutionally impermissible factor" in this context "is limited to immutable factors such as the defendant's race or gender." *Cross v. United States*, No. 15-CV-1338, 2017 WL 2345592, at *6 (E.D. Wisc. May 30, 2017).

Defendants argue there is no reason to think a waiver withstands a due process violation but not an equal protection violation, but cite nothing for this proposition. There are at least three problems with this argument.

First, one might say it begs the question of whether there is a due process violation here, and raises a circular reasoning problem *a la United States v. Worthen*, 842 F.3d 552, 555 (7th Cir. 2016).

Second, there are reasons to think due process and equal protection receive different consideration in this context: a) the case law specifying equal protection issues, and not due process issues, as examples of "constitutionally impermissible factors"; and b) the case law enforcing waivers despite changes in the law.

11

Third, if the phrase "constitutionally impermissible factor" in the context of overcoming a waiver were as broad as Defendants want it to be, then waivers arguably wouldn't amount to much.

(c)  *The sentences did not exceed the statutory maximums*

Third, the sentences did not exceed the statutory maximums, and Defendants do not claim this exception.

(d)  *No ineffective assistance of counsel*

Fourth, the Defendants do not claim ineffective assistance of counsel in connection with the negotiation of the plea agreements.

(e)  *No lack of a minimum of civilized procedure*

Fifth, Defendants do not claim a lack of a minimum of civilized procedure. In *Josefik*, the Seventh Circuit observed: "there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept." *Josefik*, 753 F.2d at 588. Defendants do not claim that their waivers amounted to anything like agreements to empanel orangutans on the jury.

**(3)**    *Arguments for other exceptions*

(a)    *Miscarriage of justice*

Defendants propose an exception to their waivers not recognized by the Seventh Circuit: miscarriage of justice. Defendants argue that enforcing their waivers would work a miscarriage of justice because the crime of conviction—§ 924(c) predicated on § 922(u)—does not exist. But in the Seventh Circuit, the proposed exception does not exist either.

The problem for Defendants here is that the Seventh Circuit does not recognize a miscarriage-of-justice exception to such waivers.[3] Defendants discuss cases from other Circuits, and two Seventh Circuit cases favorably citing cases from other Circuits regarding such an exception, without relying on or following these extra-Circuit cases. Another case decided by the Seventh Circuit just eleven days before Defendants replied appears to look favorably on other Circuits disregarding waivers to avoid miscarriages of justice. *United States v. Litos*, 847 F.3d 906, 910 (2017). This Court, however, declines to institute a miscarriage-of-justice exception to waivers when the Seventh Circuit has not expressly done so, especially here where enforcement of the waivers would not work a miscarriage of justice in the end, as demonstrated below.

(b)    *Jurisdiction*

Defendants also argue that their § 2255 motions raise a facial vagueness challenge, which is inherently jurisdictional and therefore not waivable.

---

[3] *See United States v. Garcia*, No. 3:13-CR-52-JD, 2016 WL 3999997, at *4 (N.D. Ind. July 25, 2016) ("The Seventh Circuit has strictly circumscribed the exceptions that can be invoked to appeal waivers, and has never recognized a generalized miscarriage-of-justice exception.")

The mere fact that the law changed after Defendants pleaded guilty and the Court sentenced them does not necessarily mean the waivers are unenforceable. In *Brady*, a defendant charged with kidnapping, and facing a possible death sentence, pleaded guilty. *Brady v. United States*, 397 U.S. 742 (1970). Years later the Supreme Court held that a relevant statutory provision regarding the death penalty was unconstitutional. But this change in the law did not help Mr. Brady because the possibility that the parties made an erroneous assessment of the available sentences did not invalidate his plea. A voluntary guilty plea "intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 757.

But Defendants here claim something more. They claim not merely that the law changed, but that it changed such that a conviction for § 924(c) predicated on § 922(u) is facially unconstitutional. They do not merely claim entitlement to relief because *Johnson* and *Cardena* would have changed their plea-bargaining calculus. They do not merely claim entitlement to relief because § 924(c) predicated on § 922(u) as applied to their particular circumstances is unconstitutional. Rather, they claim § 924(c) predicated on § 922(u) is unconstitutional in every circumstance.

Defendants rely on the Supreme Court's decision in *Blackledge v. Perry*, 417 U.S. 21 (1974). While serving a prison sentence, Mr. Perry had an altercation with another inmate. He was charged with misdemeanor assault with a deadly weapon. A judge convicted Mr. Perry of this misdemeanor following a bench trial, and sentenced him to six months imprisonment consecutive to the term he was already serving. He appealed, which under North Carolina law triggered his absolute right to a de novo trial in a different court.

After the appeal but before the second trial, however, the prosecutor obtained an indictment from a grand jury charging Mr. Perry with a felony on the basis of the same conduct. Mr. Perry pleaded guilty, and was sentenced to five to seven years imprisonment consecutive to the term he was already serving.

Mr. Perry applied for a writ of habeas corpus. The Supreme Court (over a strong dissent by Justice Rehnquist) held that the State violated the due process clause when it responded to Mr. Perry's invocation of his statutory right to appeal by bringing a more serious charge against him. *Blackledge*, 417 U.S. at 28–29.

But a question remained. Did Mr. Perry's guilty plea to the felony charge preclude him from raising constitutional claims in the federal habeas corpus proceeding? The Supreme Court said it did not:

> Having chosen originally to proceed on the misdemeanor charge in the District Court, the State of North Carolina was, under the facts of this case, simply precluded by the Due Process Clause from calling upon the respondent to answer to the more serious charge in the Superior Court. Unlike the defendant in *Tollett*, Perry is not complaining of antecedent constitutional violations or of a deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Rather, the right that he asserts and that we today accept is the right not to be haled into court at all upon the felony charge. The very initiation of the proceedings against him in the Superior Court thus operated to deny him due process of law.
>
> *        *        *        *
>
> The practical result dictated by the Due Process Clause in this case is that North Carolina simply could not permissibly require Perry to answer to the felony charge. That being so, it follows that his guilty plea did not foreclose him from attacking his conviction in the Superior Court proceedings through a federal writ of habeas corpus.

*Id.* at 30–31 (quotation marks and citations omitted). In sum, the Supreme Court held that a guilty plea[4] did not preclude habeas relief when the defendant had the right not to be haled into court at all on the challenged charge.

But *Blackledge* is distinguishable for several reasons.

First, *Blackledge* did not involve a situation in which a court haled a defendant before it to face charges based on a statute accepted as constitutional at the time but then later, after defendant's conviction, the law changed such that the statute was held to be unconstitutional. Rather, *Blackledge* involved a situation in which a practice pursued by a prosecutor and culminating in a conviction was itself held to be unconstitutional. In other words, if the law changed in *Blackledge*, it did not change in the same way it changed here. When the prosecutor there brought a harsher charge against Mr. Perry for exercising his right to appeal, that immediately fell within the realm of vindictiveness (even if the prosecutor did not personally act in bad faith). But when the prosecutor here brought § 924(c) charges predicated on § 922(u), no one could have said Defendants had a right not to be haled into Court to face these charges. Any sort of retroactivity flowing from *Cardena* is not the sort of retroactivity that necessarily eviscerates waivers in plea agreements.

Second, *Blackledge* did not foreclose the possibility of an explicit waiver of attack rights in a plea agreement being valid. *Blackledge* did not mention the issue. Here, on the other hand, Defendants agreed to such explicit waivers. *Blackledge* doesn't on its terms stand for the proposition that a Defendant cannot waive § 2255 by an express waiver in a plea agreement in the present situation, although *Blackledge* does implicitly suggest that proposition.

---

[4] No party develops any arguments about any potential distinction between waiver by a guilty plea and waiver by express language in a plea agreement.

Defendants also rely on *United States v. Phillips*, 645 F.3d 859 (7th Cir. 2011). Mr.

Phillips pleaded guilty to removing and disposing of asbestos insulation in violation of 42 U.S.C.

§ 7413(c)(1). On appeal, he challenged that statute as unconstitutionally vague as applied to the

facts of his case. The Court observed that a defendant who pleads guilty generally waives his

right to appeal all non-jurisdictional issues. In this context, the Court noted, "jurisdictional"

refers to a court's authority to hale the defendant into court; it does not refer to subject matter

jurisdiction. *Phillips*, 645 F.3d at 862 (citing *Blackledge*, 417 U.S. at 30). The Court explored the

distinction between facial attacks and as-applied attacks:

> While a facial attack on a statute's constitutionality is jurisdiction, an as-applied vagueness challenge is not. A facially vague statute presents a jurisdictional issue because it is by definition vague in every application, preventing a court from entering a judgment under the statute in any case and stripping the government of its ability to obtain a conviction against any defendant. Unlike a facial challenge, an as-applied challenge does not dispute the court's power to hear cases under the statute; rather, it questions the court's limited ability to enter a conviction in the case before it.

*Phillips*, 645 F.3d at 863 (citations omitted). The Court held that Mr. Phillips waived his as-

applied vagueness challenge by pleading guilty. *Id.* at 863.

The Court's discussion of the waive-ability of facial vagueness challenges is arguably

dicta, as it was sufficient for the Court to hold that as-applied vagueness challenges are waivable.

Moreover, that appeal did not call upon the Court to address any potential distinction between

waivers by guilty pleas and express waivers by plea agreements, nor did it call upon the Court to

address any potential distinction between waivers of appeal rights and waivers of § 2255 rights.

Defendants also cite *Donovan*, another case in which the Seventh Circuit followed the

*Blackledge-Menna* exception: "Although a guilty plea ordinarily waives constitutional

challenges, the Supreme Court has recognized a narrow exception when a defendant claims 'the

17

right not to be haled into court at all upon the felony charges'—the so-called *Blackledge-Menna* exception." *United States v. Donovan*, 410 Fed.Appx. 979, 981 (7th Cir. 2011).

Another case arguably supporting Defendants' arguments against waiver is *United States v. Bell*, 70 F.3d 495 (7th Cir. 1995). Mr. Bell was charged with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty and was sentenced. Then the Supreme Court declared in *Lopez* that a related subsection of the statute in question exceeded commerce clause authority. The question before the Seventh Circuit was whether Mr. Bell waived his right to challenge the constitutionality of § 922(g)(1) by entering a guilty plea without preserving the issue. The Court observed that ordinarily a guilty plea waives constitutional violations not logically inconsistent with establishment of factual guilt and which do not stand in the way of conviction if factual guilt is established. *Bell*, 70 F.3d at 496. But there is an exception:

> In situations in which the government is precluded from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty.

*Id.* at 496 (quotation marks omitted).

The Court allowed Mr. Bell past the waiver defense, using language tantalizingly resonant here:

> We will, in the circumstances of this case, consider Mr. Bell's claim. If the statute under which he was prosecuted were now found to be unconstitutional after it seemed unquestionably to be constitutional for such a long period of time, it would hardly be just to allow his conviction to stand. Furthermore, if there were no constitutional statute to be charged under, there could not be a valid establishment of factual guilt. Mr. Bell would have possessed the gun, but possessing it would not violate federal law. For these reasons, Mr. Bell's guilty plea will not preclude our review of the issue he wants to air.

*Id.* at 497 (quotation marks omitted). It turned out, though, that Mr. Bell lost on the merits. *See also United States v. Adame-Hernandez*, 763 F.3d 818, 828 (7th Cir. 2014) ("a guilty plea does not waive a challenge to an error if, as a result of that error, a court has no power to enter the conviction") (internal quotation marks omitted).

But other decisions by the Seventh Circuit arguably conflict with, or at least narrow the holdings of, these cases.

In its 2016 decision in *Worthen*, the Seventh Circuit affirmed the validity of a waiver. *United States v. Worthen*, 842 F.3d 552 (7th Cir. 2016). Mr. Worthen shot and killed a man during a robbery. A grand jury indicted him on four charges. He entered into a plea agreement in which he agreed to waive his appeal rights. He pleaded guilty to Hobbs Act robbery (18 U.S.C. § 1951) and causing death while using or carrying a firearm during a crime of violence (18 U.S.C. §§ 924(j) and 2). The district court sentenced him to 10 years for the Hobbs Act robbery and 50 years for the crime of violence for a total of 60 years imprisonment. Mr. Worthen appealed, arguing that Hobbs Act robbery was not a "crime of violence" for § 924(j) purposes.

The Court began its analysis by noting that appeal waivers are generally enforceable. *Id.* at 554. One of the few narrow exceptions to this rule is that a defendant may always contest a sentence exceeding the statutory maximum. *Id.* at 554. Mr. Worthen argued that his § 924(j) conviction was invalid, so the sentence of 60 years exceeded the statutory maximum for the only viable conviction, § 1951. So, he argued, he satisfied that exception to waivers.

But the Court distinguished the case he relied on: *United States v. Gibson*, 356 F.3d 761 (7th Cir. 2004). In *Gibson*, the conclusion that defendant's sentence exceeded the statutory maximum required nothing more than comparing the sentence statutorily allowed to the sentence

19

actually imposed. That conclusion did not require the Court first to determine that the underlying conviction was valid. Mr. Worthen, on the other hand, argued that the validity of his waiver depended on the validity of his conviction. The Court demonstrated the untenable circular nature of that argument:

> To be clear, the crux of Worthen's argument is that the validity of his appeal waiver depends on the validity of his conviction. That argument is entirely circular. Indeed, to determine whether Worthen's crime-of-violence conviction is invalid, we would have to take the appeal in the first place. Then, only if we agree with Worthen and conclude that his conviction is in fact invalid would we find that Worthen's sentence exceeds the statutory maximum, which in turn would mean that Worthen did not waive his appeal rights. So the rule would be that an appeal waiver is enforceable unless the appellant would success on the merits of his appeal. That cannot be the law.

*Worthen*, 842 F.3d at 555.

One distinction between *Worthen* and the instant case is that the Defendants here claim a jurisdictional defect. But this claim of a jurisdictional defect arguably leads the Court through the same sort of circle *Worthen* held problematic. The Court would have to consider and determine the merits of Defendants' arguments to determine whether there is a jurisdictional defect Defendants can't waive. But that might be inevitable and therefore tolerable.

Defendants make a strong point when they argue that here, unlike in *Worthen*, the relevant determination does not require the Court to engage in a lengthy, circular process because *Johnson* and *Cardena* have spoken. But it is not clear in light of *Worthen* and *Bousley* that it is necessarily easier or more direct here (in a relevant way) to determine that these convictions involving firearms fail for lack of a constitutional predicate offense, and that this failure is a non-waivable jurisdictional defect, than it would have

20

been for the *Worthen* Court to determine that the conviction there involving a firearm failed for lack of a predicate offense, such that the ultimate sentence exceeded the statutory maximum.[5]

Indeed, some of the perverse consequences the Seventh Circuit warned would flow from acceptance of Mr. Worthen's arguments seem equally threatening here. The *Worthen* Court noted that many defendants benefit from waiving their appeal rights. Mr. Worthen himself benefitted by exchanging his appeal rights for the government's agreements to drop some charges and to decline to seek the death penalty. Likewise, the three Defendants here (at least arguably) benefited by their plea agreements, which included the waivers.

The *Worthen* Court warned that if a defendant could then renege on his deal and maintain an appeal the government wouldn't have an incentive to make these deals in the future. Rather, the government might just charge defendants with all applicable crimes "and see what sticks after the appeal . . . ." *Worthen*, 842 F.3d at 556. Disregard of the waivers here seems to present similar problems.

Less than a month after *Worthen*, the Seventh Circuit enforced guilty-plea preclusion of a *Johnson* collateral attack. *Davila v. United States*, 843 F.3d 729, 732–34 (7th Cir. 2016). *Davila* also poses potential problems for Defendants. Mr. Davila pleaded guilty to conspiracy to commit

---

[5] For an example of a district court applying *Worthen* to a case challenging a § 924(c) conviction in light of *Johnson*, see *United States v. Copeland*, No. 1:13-CR-40-TLS, 2016 WL 7188610, at *3 (N.D. Ind. Dec. 12, 2016) ("The Defendant also claims that his conviction under § 924(c) violates due process because the clause is unconstitutionally vague in light of *Johnson*. If what the Defendant is arguing is that the validity of his waiver depends on the validity of his § 924(c) conviction, that argument has been rejected [by the Seventh Circuit in *Worthen*] as 'entirely circular.'").

21

Hobbs Act robbery (in violation of 18 U.S.C. § 1951) and to possession of a firearm in connection with both the planned robbery and drug trafficking (in violation of 18 U.S.C. § 924(c)(1)(A)). After sentencing, *Johnson* and *Cardena* changed the law, as previously discussed. But this change did not help Mr. Davila for the simple reason that after *Johnson* and *Cardena*, drug trafficking remains a constitutional predicate for a § 924(c) conviction.

But the Seventh Circuit recognized a deeper problem with Mr. Davila's § 2255 collateral attack against his § 924(c) conviction. He pleaded guilty, and did not fight the charge or contend that the residual clause was invalid. "He gave up those and other possible arguments as part of a plea bargain, which conferred benefits including the dismissal of two other serious charges . . . ." *Davila*, 843 F.3d at 732.

Following *Broce*, the *Davila* Court explored the applicability of the exception to the general rule that a counseled and voluntary guilty plea forecloses collateral attack if "on the face of the record the court had no power to enter the conviction or impose the sentence." *Id.* at 732 (quoting *United States v. Broce*, 488 U.S. 563, 569 (1989)). The *Davila* Court characterized this as an inquiry into subject matter jurisdiction, even though other cases characterize a similar inquiry regarding the authority of the court to hale the defendant before it to answer the charge as an inquiry into jurisdiction *but not* subject matter jurisdiction.[6]

---

[6] *Compare Davila*, 843 F.3d at 732 (internal citation omitted, emphasis added):

> That leaves the question whether the court had "power to enter the conviction"—***in other words, subject-matter jurisdiction***. A later passage in *Broce* contemplates the possibility that a plea might be invalid if the very act of initiating a criminal prosecution violated the Constitution . . . but Davila does not contend that there was any problem with this prosecution's initiation. He argues only that he is entitled to the benefit of the later decision in *Johnson*. The district court had subject-matter jurisdiction under 18 U.S.C. § 3231. This leads Davila to contend that, whenever a

The *Davila* Court observed that *Broce* contemplated the possibility that a plea might be invalid if the very act of initiating a criminal prosecution violated the Constitution, but noted that Mr. Davila did not argue there was a problem with the prosecution's initiation. *Davila*, 843 F.3d at 732. Rather, he argued only that he was entitled to the benefit of the later decision in *Johnson*. But *Johnson* did not undermine the subject matter jurisdiction under 18 U.S.C. § 3231 of the district court that sentenced Mr. Davila. *Id.* at 732. Indeed, the Supreme Court in *Johnson* and the Seventh Circuit in *Cardena* did not order the prosecutions dismissed for lack of subject matter jurisdiction. The *Davila* Court therefore held that Mr. Davila's guilty plea foreclosed a collateral attack based on *Johnson* or any other development not concerning subject matter jurisdiction or implying the institution of the charge violated the Constitution. *Davila*, 843 at 733.

*Davila* therefore seems to support the proposition that a *Johnson* or *Cardena* challenge to a § 924(c) conviction is not a challenge to subject matter jurisdiction or to the constitutionality of

---

constitutional problem crops up in a case that had been resolved by a guilty plea, the district court retroactively loses jurisdiction despite § 3231. That position runs headlong into *Broce*, for the Court there held that a guilty plea prevents collateral relief even on the assumption that the conviction violated the Double Jeopardy Clause of the Fifth Amendment.

*with Adame-Hernandez*, 763 F.3d at 828 (internal citations and quotation marks omitted, emphasis added):

> The narrow exception to the general waiver rule has been limited to jurisdictional issues. A jurisdictional issue refers ***not to subject matter jurisdiction***, but rather to a court's statutory or constitutional authority to hale the defendant into court. In other words, a guilty plea does not waive a challenge to an error if, as a result of that error, a court has no power to enter the conviction.

the institution of the charge. *Johnson* and *Cardena* do not retroactively strip district courts of subject matter jurisdiction. Rather, a *Johnson* or *Cardena* challenge is waivable.[7]

In the recent case of *Wheeler*, the defendant called upon the Seventh Circuit to reconsider *Davila*. *United States v. Wheeler*, 857 F.3d 742 (7th Cir. 2017). Mr. Wheeler pleaded guilty to an attempt to obstruct interstate commerce by robbery in violation of the Hobbs Act, and to using a gun during that crime of violence. His plea agreement contained a waiver. On appeal, however, Mr. Wheeler argued that he could not be guilty of the firearms charge because attempted robbery is not a "crime of violence" under the residual clause because that clause is unconstitutionally vague (as *Cardena* holds) and because attempted robbery does not satisfy the elements clause because an attempt to rob does not have use of physical force as an element. *Wheeler*, 857 F.3d at 744.

But the Court held Mr. Wheeler waived his arguments by pleading guilty, and by acknowledging in his plea agreement that he surrendered any argument that could have been raised in a pretrial motion. The Court cited *Davila* for the proposition that "a person who pleads guilty to a § 924(c) charge cannot use *Johnson* and *Cardena* to reopen the subject and ask a court of appeals to upset the conviction." *Wheeler*, 857 F.3d at 744.

The Court saw no need to revisit *Davila*, or to wait for the Supreme Court's decision in *Class*, which presents the question of whether an unconditional guilty plea waives a defendant's right to contest the constitutionality of the statute of conviction. *See Class v. United States*, 137 S.Ct. 1065 (2017) (granting a petition for writ of certiorari).

---

[7] Of course, there is the potential distinction that *Johnson* undermines a particular breed of sentencing enhancements, whereas *Cardena* undermines a particular breed of stand-alone crimes.

24

Yet the instant case might turn out to be in relevant respects more similar to *Class* than to *Wheeler*, for like the three Defendants here, Mr. Class argues he had a constitutional right not to be indicted, but Mr. Wheeler merely raises an issue of statutory interpretation. *Wheeler*, 857 F.3d at 745.

In addition to *Class*, several other potentially similar cases involving waivers are on appeal. *See, e.g.*, *Cross*, 2017 WL 2345592, *appeal filed* June 21, 2017 (No. 17-2282); *Howard v. United States*, No. 3:16-CV-338-RLM, 2016 WL 7034137 (N.D. Ind. Dec. 1, 2016), *appeal filed* Jan. 12, 2017 (No. 17-1078).

The Court thinks this is Defendants' best argument regarding waiver. But ultimately resolution of the waiver issue is not necessary here because Defendants lose on the merits anyway.

**(4)    *Merits***

Regardless of the waiver issue, Defendants are not entitled to relief under § 2255 because Hobbs Act robbery remains a "crime of violence" under § 924(c)'s elements clause. *United States v. Anglin*, 846 F.3d 954, 964–65 (7th Cir. 2017), *petition for cert. filed* (U.S. May 31, 2017) (No. 16-9411).

Both sides agree that violation of § 922(u) is not a "crime of violence" under the elements clause of § 924(c)'s definition of "crime of violence."[8]

---

[8] Both sides cite a 2010 Fifth Circuit case—*United States v. Schmidt*, 623 F.3d 257, 261 (5th Cir. 2010), *cert. denied Schmidt v. United States*, 131 S.Ct. 2858 (2011)—for this proposition because the Seventh Circuit has not squarely addressed this issue.

Both sides also correctly agree that the Seventh Circuit ruled that § 924(c)'s residual clause is unconstitutional. *Cardena*, 842 F.3d at 995–96.

Both sides also essentially seem to agree, correctly, that under current Seventh Circuit law the government could not charge the Defendants with violating § 924(c) predicated in any way on violating § 922(u).

But that does not end the matter.

Defendants agree that in *Bousley*, the Supreme Court held that when a change in law undermines a conviction, the defendant must demonstrate he is factually innocent of any and all forms of the statute that were abandoned by the government as part of plea negotiations, in order to obtain relief under § 2255.[9] Actually, *Bousley* is broader. It does not limit the required actual-innocence showing to other forms of the statute in question.

The *Bousley* Court recognized that to establish actual innocence, a petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Moreover, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624.

The Seventh Circuit explained in *Lewis* that the rationale for this rule is to avoid windfalls to Defendants:

> The idea behind this rule is that had the government foreseen *Bailey* [a change in the law] it would not have dropped the charge and so the petitioner, who we know wanted to plead guilty, would probably have pleaded guilty to that charge instead, and if it was a more serious charge (or we add, no less serious a charge) he would probably have incurred a lawful

_____

[9] Defendants do not advance an argument that the *Bousley* inquiry only applies when a defendant seeks to avoid procedural default.

26

> punishment no less severe than the one imposed on him under the count to which he pleaded guilty, the count that he was later determined to be innocent of by virtue of the Court's interpretation of section 924(c) in *Bailey*. Of course, it could not be said with certainty that his punishment would have been the same. A defendant may want to plead guilty whether there are two counts in the indictment or one, but if he learns that one is invalid he may hold out for a better deal on the other, since, for example, he doesn't have to worry about consecutive sentences. This is a possibility, surely, but to allow the defendant to use it to get off scot free would be to confer a windfall on him, as the government would not have dropped a good count in plea negotiations had it known that the remaining count was invalid, and if the dropped charge was indeed a good count, the defendant would not have escaped punishment had it not been dropped, punishment at least comparable to that imposed on the bad count.

*Lewis v. Peterson*, 329 F.3d 934, 936 (7th Cir. 2003). Thus, the *Bousley* actual-innocence showing extends to more-serious and as-serious charges.

Here, had the government foreseen *Johnson* and *Cardena*, it is fair to presume the government would not have forgone § 924(c) charges predicated on Hobbs Act robberies. The Defendants do not dispute the essential details of their crime spree. In particular, they admit they committed multiple armed robberies. As the government notes, it stated at the sentencing hearings that it could have based the § 924(c) charges on the Hobbs Act robbery of Jack's Loan Office or prosecutors in the Northern District of Illinois could have brought Hobbs Act robbery charges stemming from any of the armed robberies of cell phone stores in Chicago. (Transcript of Cooper's Sentencing, DE 226 at 25–27; Transcript of Ross's Sentencing, DE 243 at 28–30; and Transcript of Oliver's Sentencing, DE 225 at 24–25.) For example, at Mr. Ross's sentencing hearing, the government observed: "Each one of these [four] armed robberies could've been its own 924(c) count" and "just not charging him at all with the three Chicago robberies was a tremendous benefit to him." (Transcript of Ross's Sentencing, DE 243 at 27, 28.)

But the government forewent these charges.

27

No side disputes that a conviction for § 924(c) predicated on Hobbs Act robberies is just as serious as a conviction for § 924(c) predicated on theft from a federally licensed firearm dealer. Indeed, the punishments for the § 924(c) convictions could have been identical.

Justice requires Defendants to demonstrate their actual innocence of these other potential § 924(c) charges before gaining § 2255 relief based on the rejection of § 924(c) charges predicated on § 922(u). Defendants can't complain mere fortune dictated that Courts decided *Johnson* and *Cardena* after Defendants' convictions and sentencings rather than before if mere fortune dictated that prosecutors charged Defendants with § 924(c) predicated on § 922(u) rather than on § 1951.

But Defendants cannot demonstrate their actual innocence of these other potential § 924(c) charges. Hobbs Act robbery was and remains a "crime of violence" under § 924(c)'s elements clause. *Anglin*, 846 F.3d at 964–65. And Defendants each admitted to facts sufficient to support a conviction for violating § 924(c) predicated on Hobbs Act robbery.

Hobbs Act robbery requires the government to prove a defendant committed robbery that interferes with commerce or the movement of any article or commodity in commerce. 18 U.S.C. § 1951; *United States v. Villegas*, 655 F.3d 662, 668 (7th Cir. 2011). The statute defines "robbery" as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . . ." 18 U.S.C. § 1951(b)(1).

Defendants admitted facts sufficient to support multiple convictions for § 924(c) predicated on § 1951.

28

For example, the facts in the presentence investigation reports (to which the Defendants did not object in relevant part after revisions, and which the Court adopted) demonstrate Defendants committed at least one Hobbs Act robbery at Jack's Loan Office.

In addition, at their change-of-plea hearings, Defendants admitted facts establishing Hobbs Act robberies. Mr. Oliver, for example, admitted robbing Cricket with Mr. Ross and a firearm; admitted robbing Get Connected with Mr. Ross, Mr. Cooper, and a firearm; admitted robbing Hotline Wireless with Mr. Ross, Mr. Cooper, and a firearm; and admitted robbing Jack's Loan Office with Mr. Ross, Mr. Cooper, and a firearm. (Transcript of Oliver's Plea Hearing, DE 224 at 28–41.)

Regarding Jack's Loan Office in particular, Mr. Cooper admitted Defendants entered Jack's Loan Office planning to rob it, one of the Defendants brandished a firearm placing the employees in fear so they would hand over firearms, and Defendants completed the robbery. Mr. Ross admitted essentially the same incriminating facts. Mr. Oliver admitted Defendants planned to commit a series of robberies of businesses engaging in interstate commerce, including Jack's Loan Office, and he admitted one of the Co-Defendants brandished a firearm at Jack's Loan Office. Mr. Oliver flatly admitted violating § 924(c) predicated on a Hobbs Act robbery.

The Court affords sworn statements made by Defendants during their change-of-plea hearings a presumption of verity. *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002). Indeed, Defendants do not now seek to recant these statements. Defendants' statements demonstrate that each Defendant committed multiple § 924(c) violations predicated on Hobbs Act robbery. As the government notes, the simple fact is that Defendants are not innocent of using a gun during and in relation to a crime of violence. And as the government said several

29

times, the Defendants could easily have been charged with multiple Hobbs Act robberies and multiple 924(c)s predicated on those robberies. (*See, e.g.*, Transcript of Cooper's Sentencing, DE 226 at 27.)

Granting Defendants relief under § 2255 would amount to a windfall here because the government could have charged them with violating § 924(c) predicated on § 1951 had anyone known the Courts would eviscerate § 924(c)'s residual clause and thereby eliminate the possibility of a conviction for violating § 924(c) predicated on § 924(u), since § 924(u) does not satisfy § 924(c)'s elements clause under the categorical approach.

Therefore, since Defendants admitted committing Hobbs Act robberies, which were and remain valid predicate offenses for purposes of § 924(c)'s elements clause, Defendants cannot demonstrate their actual innocence and cannot demonstrate entitlement to relief under § 2255.

### D.    Conclusion

The Court concludes that a hearing is not warranted.

The Court denies all requests for additional briefing.

The Court denies the motions for relief under § 2255 (DE 212; DE 214; and DE 215).

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court to issue or deny a certificate of appealability when entering a final order adverse to the movant. To obtain a certificate, the movant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*,

537 U.S. 322, 336 (2003). Given the changing legal landscape in this area, the Court grants a certificate of appealability to each of the three Defendants.

      **SO ORDERED** on August 31, 2017.

                  s/ Joseph S. Van Bokkelen
                  JOSEPH S. VAN BOKKELEN
                  UNITED STATES DISTRICT JUDGE

---

[i] **Regarding Mr. Ross:**

**Ross's Plea Agreement**, DE 68 at 3: "I will plead guilty to Count 1 of the Indictment charging me with Theft of Firearms from a Federally Licensed Firearm Dealer, in violation of 18 U.S.C. § 922(u), because I am, in fact, guilty of the offense charged in Count 1 . . . I will plead guilty to Count 2 of the Indictment charging me with use of a firearm during the commission of a Federal crime of violence, in violation of 18 U.S.C. § 924(c), because I am, in fact, guilty of the offense charged in Count 2 . . . I understand that because the firearm was brandished the minimum mandatory term of imprisonment that will be imposed upon me for my conviction of the offense in Count 2 of the Indictment is seven (7) years in prison consecutive to any other term of imprisonment to which I may be sentenced on the other counts."

**Ross's PSR**, DE 123 at 4–9: "On September 3, 2010, Jack's Loan Office . . . was robbed at gunpoint by Ryan Ross, Aaron Cooper, Lawrence Williams and Ralph Oliver . . . In an interview with agents, Ross stated that he participated in three robberies of telephone stores in Chicago, Illinois prior to the instant offense."

**Addendum to Ross's PSR**, DE 124: The PSR at DE 123 includes revisions requested by Mr. Ross, and no objections remain.

**Sentencing Recommendation for Ross**, DE 125 at 2: "The defendant advised that prior to the instant offense, he participated in three robberies of businesses that sell mobile phones . . . ."

**Excerpt Transcript of Ross's Plea Hearing**, DE 135.

**Transcript of Ross's Sentencing**, DE 243 at 26–42.

*Id.* at 42: Court: "Mr. Ross didn't just rob Jack Loan's Office, he has admitted to three additional armed robberies in Chicago. Mr. Ross has put human life at grave risk four times.")

[ii] **Regarding Mr. Cooper:**

**Cooper's Plea Agreement**, DE 53 at 3: Identical to the language from Mr. Ross's plea agreement quoted in endnote i, above.

**Excerpt Transcript of Cooper's Plea Hearing**, DE 136.

**Transcript of Cooper's Sentencing**, DE 226 at 18–36.

*Id.* at 26–27: Government: "So based on his cooperation, I elected not to put him in the superseding indictment and not to make him eat, for lack of a better word, those Chicago robberies . . . I could've put him and his co-defendants into the superseding indictment since they both confessed and they both pointed the fingers at the other ones . . . they could easily be charged with four Hobbs Act robberies and four 924(c)s . . . ."

*Id.* at 28–29: Defense counsel: "But even if you give 111 months, if you divide that by 4, he's getting 27 month per robbery."

*Id.* at 36: Court: "Mr. Cooper has admitted he participated in two other robberies for which he has not been charged."

### [iii] **Regarding Mr. Oliver:**

**Oliver's Plea Agreement**, DE 134 at 3: "I will plead guilty to Count 5 of the Superseding Indictment charging me with Conspiracy to Interfere with Commerce by Threats or Violence, in violation of 18 U.S.C. § 1951, because I am, in fact, guilty of the offense charged in Count 5 . . . I will also plead guilty to Count 3 of the Superseding Indictment charging me with use of a firearm during the commission of a Federal crime of violence, in violation of 18 U.S.C. § 924(c), because I am, in fact, guilty of the offense charged in Count 3 . . . I understand that because the firearm was brandished the minimum mandatory term of imprisonment that will be imposed upon me for my conviction of the offense in Count 3 of the Superseding Indictment is seven (7) years in prison consecutive to any other term of imprisonment to which I may be sentenced on the other counts."

**Oliver's PSR**, DE 184 at 5–8.

**Addendum to Oliver's PSR**, DE 185: The PSR at DE 184 includes revisions requested by Mr. Oliver, and no objections remain.

**Transcript of Oliver's Plea Hearing**, DE 224 at 27–41.

**Transcript of Oliver's Sentencing Hearing**, DE 225 at 13–33.

*Id.* at 33: Court: "Mr. Oliver's offense conduct is obviously extremely serious. The fact that it comprises four separate robberies over a span of two weeks shows that he had plenty of time to think about what he was doing. He revealed a disturbing disregard for human life and the law."